which is 21-1031 John Cottam v. 6D Global Technologies, Inc. Can I possibly reserve 30 seconds for rebuttal? Absolutely. We will ask the Deputy to reserve 30 seconds of rebuttal time for Mr. Cottam. And presumably Mr. Cottam, you've seen how the clocks work from watching some of the councils. You'll have green at the beginning and then as it ticks down you'll get into yellow and red warning you when your time is close. Okay. Please proceed. Thousands of people were damaged by the sly deceit of Benjamin Whey and Tijun Kang. In years of successful racketeering fraud involving reverse mergers into shell companies and stock price manipulation, Benjamin Whey and his accomplices netted probably close to half a billion dollars. Tijun Kang was part of this in 6D. This criminal activity is documented publicly. They lied about the shell company status of CTEK. They lied about the shell company status of 6D. They lied about the reverse merger and Benjamin Whey's involvement. They lied about the number of shares investors would get and they lied about the standard automatic six-month unrestriction which cost me about $2.5 million in lost profits alone on the shares I was given. 6D's own auditor resigned after failing to have Tijun Kang removed as CEO after they caught him illegally gifting shares to Benjamin Whey associates, among other things. The lower court essentially denied the existence of all of this evidence. In summary judgment they said my arguments were conclusory, I was dressing up a contract dispute in the language of fraud, that Tijun Kang won on the merits, and that Tijun Kang escaped constructive fraud also because I did not show that he had complete domination over 6D acquisitions, which was a one-man operation. I'm sorry, Mr. Khattam, just so I understand which argument you're making now. Are you arguing against the dismissal of your securities claim or are you arguing about the damages? Well, this all goes to damages, including punitive damages. Okay, so if you could just maybe focus your remarks on why it is that the district court was wrong in denying damages. And that's why I'm saying that, why, because they denied partly all of this evidence. They also removed him from constructive fraud stating that he was not responsible because I didn't show he had complete domination of 6D acquisitions when it was a one-man operation. The reference they used was taken out of context. Most of the cases showed that there was no such relief given. The defendants also promised a standard six-month automatic restriction that they reneged on in February of 2015. And this- Mr. Khattam, can I ask a question about the restriction and the reneging because I referenced that in your brief. I was trying to find in your complaint whether that was pled as a distinct breach of contract independent of the failure to deliver the right number of shares. Is that something that was pled as a claim in its own right? Sure, it was claimed from day one. Can you tell me where in the complaint to find that? I don't have the complaint with me, but I did mention that several times that this was very, very key. And it was in my affidavit, too, mentioning this issue because that whole unrestriction issue was major. They actually reneged on this in February 2015 without communicating it to investors and then changed that thing, the list requiring five things. First, they changed it again in May requiring seven things and again in July requiring ten things. This was after shares were already supposed to be fully unrestricted. In an email from my auditor, I'm going to quote, our firm has contacted attorneys to seek solution for the roadblocks 6D has set up to impede trading. 6D changed the requirements in February which have made it impossible to comply with. 6D's trading pattern also shows millions of shares sold on single days when the public was only given about a million shares total. The only people who had any shares that could be sold were Benjamin Way and Tijun Kang. They iced everyone out and then engaged in a stock price manipulation scheme consistent with wash sales that netted them close to $70 million while the investors couldn't get their shares out. If the defendants had kept their promises, there would have been about 17% more shares and reducing the price by about 17%. If you're told anything else, you're being lied to. It was claimed that the stock must be valued on the first day of trading and sold on that day totally decimating the price. This methodology is inapplicable. One, the stocks were restricted and couldn't be sold. Two, nobody would have tried to dump all their shares on one day. And three, if you were to buy a lottery ticket and contract with someone to take that money and buy that lottery ticket and they absconded with that ticket that day and then cashed in the billion in winnings two weeks later after the drawing, no court would say that the actual proper value of damages was on the day that the ticket was stolen when it was worth $2. The same thing happened here. I paid my money for my shares, took my risk of losing everything, then was illegally denied the winnings. The real world numbers are... Mr. McAdam, you are over your time now. You reserved 30 seconds. If you'd like, you can continue and use the 30 seconds now, or would you rather hold on to a little time for rebuttal? It's your option. Well, I'll hold it for rebuttal then. Okay, we'll come back to you. Mr. Feeney for the appellate? Yes. Mr. McAdam, you can wait up here at the table right over here for the appellant or wherever you like. Good afternoon, Your Honors. It is truly a great privilege to appear before this honorable court and Your Honors. Your Honors, this case and its outcome all turn on one basic legal principle, which is non-dispute and undisputed facts that were determined in a bench trial before a very learned district judge who was very careful about her and wrote a very scholarly decision. The clear law in New York that this court has recognized multiple times over and over is that a plaintiff in a breach of contract case must provide by a preponderance of the reasonable estimate of damages. Can I ask you just to jump in and get that principle? In this case, this isn't like cases we've talked about earlier in the day where the value of shares is determined by accountants doing projections. There's a market. These shares are traded on a market and your expert provided some good reasons to question or discount the market trading price as perhaps not reflective of the full value of the shares that weren't delivered. I'm having a hard time figuring out, though, how you go from their trading at $8.30 per share on the day of performance was due to they had zero value. Is it your position that the dilution accounted for the entirety of that? The dilution and the restrictions nullified any value or- Your Honor, no. At the trial, the district judge, first the district judge correctly observed that an expert discovery while the plaintiff was represented by counsel. We spent about $50,000 for an expert who on our opening reports, we had opening reports, and I expected him to have an, I expected the other side to have an expert to do exactly what you just said. Yeah. I expected them to spend $50,000 to $100,000. They're seeking $19 million. Yeah. So I thought they might have an expert report that would say it's $8.30 and here's how you discounted. Now I asked my expert to explain because I wanted the opportunity to see what they had to say. So I did an expert report, an opening report, where he set forth all of these factors that would dramatically push the stock price to what he thought would be less than a fraction of a penny, but we didn't take the exact amount because we wanted to see what the plaintiff would say. It's his burden. And while represented by counsel, he had no expert report. That's the answer to your question. He elected to not meet his burden. Now, I can tell you, it's not in the record, it's about, it's a fraction of a penny. He made $70,000 in the deal. He probably didn't get an expert because if you did the math, if it was worth a fraction of a penny, his damages might have been $25,000 if you just go by the stock he didn't get, but then he got $70,000. So whether it's because his counsel committed malpractice, whether it's because he wouldn't pay for an expert, whether it's because they went to an expert to do a ballpark and found out that the amount of damages would be so low that they couldn't credibly put on a report, he elected not to put an expert report. So when I went to Judge Schoenfeld at trial, my expert, and by the way, I also thought that he might have gone to Judge Schoenfeld and said, I know I never put in an expert report, but can I do one now? I thought he might have done that, that he might have said even two years after expert discovery closed, and I had the brief ready to say to her, you can't do that, even though it was pro se, now I would have to, we'd have to reopen expert discovery. He didn't even do that. Is it your position that expert testimony is essential to establish a primary case of stock value in cases like this? Well, I agree with the judge that it may not be, but as a practical matter, maybe. But you don't have to decide that in this case, because on these facts, in this case, you have multiple factors that absolutely would undeniably have pushed that stock price down dramatically, and one of the cases that really helps us understand this area of the law is in my brief. It's the Exodus Partners versus, if I'm pronouncing it right, Cook case. It's on page 25 of my brief, and it's Southern District of New York, 2007 West Law, 120-053 at pinpoint 15. And the judge in that case ruled that to award an amount, any amount in between 0 and 500,000 would require the court to engage in pure guesswork. The bottom line is, if you have a contract claim, if you think you're buying a house, let's say, and you think you were damaged, and you do an appraisal, and you get a fair appraisal, and the defendant thinks you're, let's say you value the house at a million, and the defendant thinks it's worth 800, if the defendant thinks you had some problem in your appraisal, you still should win. If you proved a breach, you should win, because you estimated it, and maybe the defendant can meet the burden of showing why it's wrong. But when you have such a wide range, when you're literally saying, I want $19 million, but I never got an expert, even with a counsel, and I didn't even ask Judge Schoenfeld two months before trial, can I get one now, please, and I'll give Mr. Feeney time to rebut it, and you just come in with this true personal anger about these men who sold him these securities. You hear he's very angry, and he has a right, and this court, and Judge Schoenfeld, and I am so proud as the son of an immigrant that we allow every person to have their day in court, and you gave him that day in court. This court and the lower court gave him his day, but he did not meet the minimal burden, and there's no way for this court to pluck a number out of the air on the record. If he sends it back to Judge Schoenfeld, there's no way for her to pluck a number out of the air. She gave him multiple opportunities to put on his case. I think we have your point. Okay. Unless there are any further questions, I think, why don't we hear from Mr. Cottom again? Thank you. Mr. Cottom, you've reserved some time, so, again, you can settle in at the podium whenever you're ready. Thank you. We're prepared to hear from you. Yeah. This was a criminal enterprise. We were told from day one that if there was any award, they would just simply file bankruptcy, and I would end up with nothing. That's one of the reasons I never got an expert, but Judge Sullivan agreed in a letter of response to my original lawyer that we did not need an expert. He said specifically the defendant's expert will testify to this, that, and the other. It makes no sense. You've got clear, easy numbers that are easily taken from the public record as to what the damages are. The Supreme Court precedent is clear. In fraud cases, the difference is the difference between what you got and what you would have gotten without the fraud. We know exactly what I got, which was the $940,000. We know exactly what I was supposed to get, which was the 2,900,000 shares freely trading as of March 29, 2015. We know exactly those numbers on exactly those dates. You don't need to say, oh, well, you're way off or whatever. These numbers are $20 million. You can't argue with them because it's in there. It's in the public record. You're talking about the value after the restrictions were off? Right. After they were supposed to be off but were negged upon. They were negged upon these restriction requirements and never even communicated it to investors until we found out after the fact. That's why nobody got out. I was the only one who got out because I was scammed on a Benjamin Way scam earlier where I lost $3 million in a company called Deere that turned out to be a closed factory in China. Mr. Kahnem, I think we understand your argument and that of Mr. Feeney. We will take this case under advisement as all the other cases that we also heard today. We thank you all for being here today. I believe there are no motions on the calendar, and so I would ask the Deputy to adjourn.